**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

UNITED STATES OF AMERICA,

v.                                                                CASES NO.  4:00cr52-RH/WCS
                                                                                      4:04cv67-RH/WCS

RICHARD JAMES ADAMSON, JR.,

       Defendant.

_____/

**ORDER DENYING §2255 MOTION**

      Defendant Richard James Adamson, Jr., was convicted in this court of ten

counts arising from threats he made to two federal magistrate judges and an FBI

agent.  The conviction and sentence were affirmed on appeal.  Mr. Adamson now

seeks relief under 28 U.S.C. §2255 on various grounds.  The magistrate judge has

entered a report and recommendation concluding that relief should be denied.  Mr.

Adamson has filed objections.  I have reviewed *de novo* the issues raised by the

objections.  I conclude that the report and recommendation is correct and should be

adopted as the opinion of the court, with the following additional discussion.

**I**

      Mr. Adamson pled guilty in Florida state court in 1988 to murdering his

grandfather.  He was sentenced to 30 years in prison.

In 1993 Mr. Adamson filed a petition for writ of habeas corpus under 28 U.S.C. §2254 in the United States District Court for the Northern District of Florida, *Pensacola* Division.  Mr. Adamson filed the petition in that venue because he was in custody in a state facility there.

In 1995 United States Magistrate Judge Susan M. Novotny entered a report and recommendation concluding the petition should be denied.  The district judge in the case (not I) adopted the report and recommendation, and judgment was entered denying the petition.

By July 2000 Mr. Adamson had been transferred to a facility within the geographic territory of the Northern District of Florida, *Tallahassee* Division.  The Federal Bureau of Investigation received information that Mr. Adamson had solicited a fellow inmate, Donnie Alexander, to arrange the murder of Judge Novotny.  FBI agent Mark Leon investigated.  An attempt to confirm Mr. Adamson's solicitation by having Mr. Alexander wear a wire was unsuccessful. Mr. Adamson learned of the wire.

During the next month—in August 2000—Mr. Adamson mailed four handwritten letters to Judge Novotny graphically threatening to injure or kill her. Mr. Adamson has stipulated that he wrote the letters.

The first letter included a long assortment of not very thinly veiled threats and referred among other things to the possibility that someone (apparently at Mr. Adamson's behest) would "stick a curling iron up your twat and plug that sucker

in."  Letter of Aug. 6, 2000 (Gov't Ex. 12A) at 5.

The second letter suggested the first letter had been too vague and said:

> I am coming to kill you—personally.  I will use whoever and whatever means it takes to get to you. . . .

> I have killed before.  You know this to be true.  If you do not believe I am fucked up enough in the head to kill you, I suggest you reread my habeas corpus petition that you recommended should be denied.

Letter of Aug. 16, 2000 (Gov't Ex. 1A) at 3.  Mr. Adamson went on to admit explicitly that he murdered his grandfather.

In the third letter Mr. Adamson—a prison "writ writer" of long standing who asserts he has helped free a number of inmates—said he intended to contact "every convict I have set free, every convict I know, and every freeworlder I know" to obtain recompense for Judge Novotny's actions.  Letter of August 17, 2000 (Gov't Ex. 2A) at 1.

Coincidentally, Mr. Adamson learned at about this time that a separate habeas petition he had filed in the Southern District of Florida challenging revocation of gain time had been transferred to the Northern District of Florida, *Tallahassee* Division, where it was assigned to Magistrate Judge William C. Sherrill.  In the fourth August letter, Mr. Adamson wrote Judge Novotny saying he was disappointed the case was not transferred to Pensacola, where Judge Novotny sits, because, Mr. Adamson said, he had been looking forward to "snapping your fucking neck during the evidentiary hearing."  Letter of August 19, 2000 (Gov't

Ex. 3A) at 1.  Mr. Adamson also enclosed a picture of himself, telling Judge

Novotny it would curl her hair.

In addition to threats, Mr. Adamson said that he intended to send Judge

Novotny a gift.  He said she would know the source.

Apparently because of the mailing of the threatening letters, by October

2000 state correctional authorities transferred Mr. Adamson to the Florida State

Prison, a less favored facility.  On October 26, 2000, Mr. Adamson wrote Judge

Novotny another letter, surmising that he was transferred because Judge Novotny

had received a package containing a curling iron and butcher knife or ice pick from

Boston.  Mr. Adamson said he had solicited another inmate—Donnie—to have the

package sent.

On November 7, 2000, a grand jury indicted Mr. Adamson on eight counts

arising from the four August letters.  Each letter resulted in two counts—one for

threatening a judge in violation of 18 U.S.C. §115, and one for mailing a

threatening communication in violation of 18 U.S.C. §876.  The indictment was

returned in the Northern District of Florida, *Tallahassee* Division, because Mr.

Adamson was in custody and mailed the letters from a facility within that division.

Pursuant to the court's random assignment system, the case was assigned to me.

Deputy marshals picked up Mr. Adamson at Florida State Prison and took

him to Tallahassee for his initial appearance on the federal charges.  Magistrate

Judge Sherrill conducted the initial appearance on November 29, 2000.

(Document 4.)  Mr. Adamson was detained at the Federal Detention Center in Tallahassee, where he solicited a fellow inmate to kill Mr. Leon, the FBI agent whose July 2000 investigation triggered the entire episode (and who was mentioned repeatedly in the August 2000 letters to Judge Novotny).

On April 3, 2001, a grand jury returned a superseding indictment that retained the original eight counts arising from the August 2000 letters and added a count nine charging Mr. Adamson's with soliciting the use of force against Mr. Leon in violation of 18 U.S.C. §1114.

Mr. Adamson was sent to the Federal Correctional Institution in Petersburg, Virginia, for a psychiatric examination.  While there, he told the examiner he intended to "knock out" his court appointed attorney.  The examiner reported the threat to the attorney, who moved for leave to withdraw.  The motion was granted, and a new attorney was appointed.

On April 3, 2001, a grand jury returned a superseding indictment that retained the original eight counts arising from the August 2000 letters and added a count nine charging Mr. Adamson's with soliciting the use of force against Mr. Leon in violation of 18 U.S.C. §1114.

On April 5, 2001, Mr. Adamson wrote a letter to Judge Sherrill, who had entered a report and recommendation concluding that Mr. Adamson's habeas petition challenging the state revocation of gain time should be denied.  The letter said, "I know you denied my habeas corpus as a favor to that whore Novotny.  I am not going to appeal.  What I am going to do is whip your candy ass, that is if you are man enough to pull off your dress and face me like a man . . . ."  Tr. Jan. 3, 2002 (document 154) at 12.  Mr. Adamson admits he wrote the letter.  *Id*. at 13.

In accordance with the conclusions of the Petersburg examination, Mr.

Adamson was found competent to proceed.  On June 13, 2001, Mr. Adamson filed

a motion for removal of his court-appointed attorney (his second), for appointment

of a new attorney (his third), and for leave to act as his own co-counsel.  Mr.

Adamson asserted the second attorney (who was representing Mr. Adamson only

in this criminal case, not in the habeas case challenging the revocation of state gain

time) had failed to file a motion for a certificate of appealability in the habeas case.

That was, of course, the same habeas case in which Mr. Adamson had told Judge

Sherrill he was not going to appeal.  Mr. Adamson's motion for removal of the

attorney was originally denied, but the attorney then moved for leave to withdraw,

saying he accepted the appointment in what he knew would be a difficult case but

"did not agree to endure and engage in a strategy match with a client who is intent

on attacking his state court conviction by setting up his lawyer and threatening

counsel with law suits and bar complaints."  (Document 39 at 2.)  The attorney was

granted leave to withdraw and, in due course, a third attorney was appointed for

Mr. Adamson.  Mr. Adamson withdrew his request to act as his own attorney.

On July 10, 2001, a grand jury returned a second superseding indictment,

retaining the earlier counts and adding a count ten charging Mr. Adamson with

mailing a threat to Judge Sherrill in violation of 18 U.S.C. §876.

On January 3, 2002, Mr. Adamson entered a guilty plea to count ten and

asked for a bench trial on the remaining counts.  A hearing was conducted on the

reasons for Mr. Adamson's request for a bench trial.  The colloquy is set forth at

some length in the report and recommendation and is not repeated here.  Of note,

Mr. Adamson and his attorney emphasized that they wanted a bench trial for

strategic reasons, and Mr. Adamson said he wanted me to conduct the bench trial,

even though he was charged with threatening my "constituents and co-workers and

such." Tr. Jan. 3, 2002 (document 154) at 23.  Mr. Adamson said he had no

concern about my ability to be impartial, and he added:  "I knew about you long

before I came here.  You have a good reputation in the state for being impartial."

*Id.*[1]  In short, Mr. Adamson was steadfast—he wanted a bench trial with me

presiding.  I announced on the record my finding that Mr. Adamson had

knowingly, voluntarily, and intelligently waived his right to trial by jury.

After a bench trial, I found Mr. Adamson guilty, for reasons set forth on the

record (and quoted at some length in the report and recommendation).  It seems

unlikely that any district judge—from this district or anywhere else—would have

reached a different conclusion.

## II

Mr. Adamson made no assertion that I should have disqualified myself until

after he was convicted.  Dissatisfied with the outcome, he asserted I should not

have presided over the case.  I addressed this assertion in a detailed order entered

---

[1] Such transparent pandering to the decision maker proves little about the
real reason Mr. Adamson made the decision he did—but the comment does make
clear that Mr. Adamson thought about the fact that the magistrate judges and I were
"co-workers" and nonetheless chose to have a bench trial with me presiding.

July 3, 2002.  (Document 161.)  A copy is attached to this order.  For the reasons

set forth there, disqualification was not required.

### III

In his objections to the report and recommendation now before the court,

Mr. Adamson acknowledges:

> The trial judge did adequately advise Mr. Adamson of his right to a
> jury trial and the dangers inherent in being tried by a judge when the
> charges involve another judge.  Mr. Adamson was aware of Judge
> Hinkle's existence through his work as a paralegal before he ever
> consented to a bench trial, and he had no qualms, at the time of
> waiver, about the judge's ability to remain impartial.

Objections (document 293) at 25 (emphasis in original).  Mr. Adamson asserts,

however, that he did not know that Judges Sherrill and Novotny worked on cases

assigned to me.

The assertion is plainly incorrect and would make no difference anyway.

First, Judge Sherrill conducted the initial appearance on the original indictment in

this very case.  Mr. Adamson thus well know that Judge Sherrill worked on cases

assigned to me; he did so in this case.[2]

More importantly, any assertion by Mr. Adamson that he decided to waive a

jury trial and proceed with a bench trial before me based on anything his third

appointed attorney did or did not do is demonstrably false.  Mr. Adamson had filed

---

[2] The initial appearance occurred before Mr. Adamson threatened Judge
Sherrill.  That threat came later, and the charge based on that threat was added by
superseding indictment.  Judge Sherrill participated no further after that charge was
added.

a written request for a jury trial *pro se*, long before this latest attorney was appointed.  On the facts of the case, Mr. Adamson's chance of avoiding conviction was surely a long shot.  He chose a bench trial, and he made clear he wanted to have the bench trial before me, perhaps in the belief that this was his best chance to prevail (that is what he said in the hearing when he waived his right to a jury trial) and perhaps in the belief that he could always cry foul later.  Indeed, much of Mr. Adamson's conduct of this proceeding has been a thinly veiled effort to game the system.  The many cases making clear that any assertion that a judge should disqualify himself or herself must be made promptly recognize the potential for abuse inherent in any other approach.  Mr. Adamson has shown neither ineffective assistance of counsel nor prejudice.

## IV

For these reasons and those set forth in the report and recommendation, which is adopted as the further opinion of the court,

IT IS ORDERED:

Defendant's second amended motion for relief under 28 U.S.C. §2255 (document 258) is DENIED WITH PREJUDICE.  The clerk shall enter judgment and close the file.

SO ORDERED this 23d day of July, 2007.

s/Robert L. Hinkle
Chief United States District Judge